UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JASON S. HESCHKE,

                                        Plaintiff,        18-CV-196

        v.                                                DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

## INTRODUCTION

On March 21, 2014, Plaintiff protectively filed an application for supplemental security income ("SSI") alleging disability beginning on November 27, 2012. Tr.[1] 118.   After the application was denied, Plaintiff timely requested a hearing. Tr. 135-37.  On August 2, 2016, Plaintiff appeared with his counsel, Felice A. Brodsky, Esq., and testified at a hearing before Administrative Law Judge Bryce Baird ("the ALJ"). Tr. 52-94.  Toni Marie McFarland, the Vocational Expert ("VE"), also testified at the hearing. Tr. 78-94. The ALJ issued an unfavorable decision on November 17, 2016. Tr. 19-26. Plaintiff then timely requested review by the Appeals Council, and on December 11, 2017, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner of Social Security ("the Commissioner"). Tr. 1-6.  Plaintiff subsequently filed this lawsuit pursuant to Title XVI of the Social Security Act (the "Act") seeking review of the final decision of the Commissioner denying his application for SSI.[2] ECF No. 1.

---

[1] "Tr." refers to the administrative record in this matter.  ECF No. 5.

[2] The Court has jurisdiction over this action under 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3).

Presently before the Court are the parties' competing motions for judgment on the pleadings. ECF Nos. 15, 20. For the reasons that follow, Plaintiff's motion for judgment on the pleadings (ECF No. 15) is GRANTED, the Commissioner's motion (ECF No. 20) is DENIED, and the matter is REMANDED for further administrative proceedings consistent with this Decision and Order.

## LEGAL STANDARD

### I.      District Court Review

The scope of this Court's review of the ALJ's decision denying benefits to Plaintiff is limited. It is not the function of the Court to determine *de novo* whether Plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed. *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007), *cert. denied*, 551 U.S. 1132 (2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault*, 683 F.3d at 447-48 (internal citation and quotation marks omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).

### II.     Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial

2

gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 416.920(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 416.960(c).

3

## DISCUSSION

### I.      The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above.  At step

one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful

activity since the application date of March 21, 2014.  Tr. at 21.  At step two, the ALJ found that

Plaintiff suffered from several severe impairments: degenerative disc disease, herniated discs, and

obesity.  *Id.* The ALJ determined that Plaintiff's learning disorder and adjustment disorder with

depressed mood were non-severe impairments.  Tr. at 22.

The ALJ proceeded to the third step of the analysis and found that the severity of Plaintiff's

impairments did not meet or equal the criteria of any listing.  Tr. at 23.  He then determined that

Plaintiff retained the RFC to lift/carry twenty pounds occasionally and ten pounds frequently; sit

for six hours out of an eight-hour workday; stand/walk for four hours out of an eight-hour workday,

all while having the option of standing and walking for up to ten minutes after sitting thirty

minutes, and sitting for thirty minutes after standing or walking for fifteen minutes.  *Id.* The ALJ

also determined that Plaintiff could occasionally climb ramps and stairs, kneel, crouch, frequently

balance and stoop, never climb ladders, ropes or scaffolds, or crawl, and could not have any

exposure to excessive moisture, humidity, excessive vibrations, or unprotected heights or moving

machinery.  *Id.* Lastly, the ALJ opined that Plaintiff's work was limited to simple routine tasks

with no production rate or pace work, and to work that does not require teamwork.  *Id.*

At step four, the ALJ found that Plaintiff could not perform his past relevant work.  Tr. at

25.  The ALJ then proceeded to step five, where he determined that there were jobs in the national

economy that a person of Plaintiff's age, education and work experience could perform, such as

an office helper, router, and inspector/hand packager. Tr. at 26. Accordingly, the ALJ concluded that Plaintiff was not disabled.

## II.    Analysis

Plaintiff argues that the ALJ erroneously discounted the favorable medical opinions of Plaintiff's treating physicians and failed to property develop the record regarding Plaintiff's limitations stemming from his back impairment. ECF No. 15 at 14-21. Plaintiff also argues that the ALJ failed to properly evaluate Plaintiff's symptoms and complaints of pain in his analysis. *Id.* at 21-26.

As a general matter, an ALJ must defer to an opinion of a claimant's treating physician. *Halloran v. Barnhart*, 362 F. 3d 28, 32 (2d Cir. 2004) (internal and other citations omitted). It is well-settled that the medical opinion of the claimant's treating physician is given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal citations omitted). If the ALJ determines that the opinion a treating physician is not entitled to controlling weight, he must decide how much weight, if any, to give it. In doing so, the ALJ must explicitly consider what is known as "*Burgess* factors," which include "(1) the frequency, length, nature, and extent of Plaintiff's treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (internal citations omitted); *see also* 20 C.F.R. § 416.927 (c)[3].

---

[3] Changes to 20 C.F.R. § 416.927 regarding the consideration of opinion evidence eliminated application of the "treating physician rule" for claims filed on or after March 27, 2017. However, for purposes of this appeal, the prior version of the regulation applies.

When assigning weight to the opinion of a treating physician, the ALJ must comprehensively articulate his reasons for the weight assigned to it. *Halloran,* 362 F. 3d at 32 (citations omitted). The ALJ's "[f]ailure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted). "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight at step two is a procedural error" that requires remand for further proceedings to consider the reasons for not providing controlling weight to the opinion of a treating physician. *Estrella*, 925 F.3d at 96. However, if a review of the record assures the Court "that the substance of the treating physician rule was not traversed," in other words, if the record provides "good reasons" for assigning less than controlling weight to it, the Court should affirm the ALJ's decision. *Id.*

Narration of relevant history of Plaintiff's physical limitations may be helpful here. Plaintiff, who was 37 years old at the time of the application, has been struggling with severe back pain since injuring his back while lifting butcher-block tables at work in 2006. Tr. at 332. Since then, several medical professionals diagnosed him with degenerative disc disease of his lumbar spine, lumbar instability of L4-5 and L5-S1, disk herniation, bulging, and tear, and lumbar radiculopathy and spondylosis. Tr. at 334, 342-44, 363, 368, 370, 381, 442, 447, 453, 457, 473, 485. To treat his progressively worsening back pain, numbness, tingling and stiffness in lumbar back and lower extremities, Plaintiff underwent a variety of conservative pain management treatments, which consisted of physical and aquatic therapy, epidural injections, chiropractic treatments, and medication treatment that included his daily intake of opiates such as Morphine, Oxycodone, and Percocet. Tr. at 275-21, 329-40, 342-49, 363-64, 367, 370, 373-77, 444-45, 450, 474, 481. After having received only temporary relief of his symptoms, Plaintiff underwent two

back surgeries - a 2008 L5 discectomy and a 2015 L4-S1 fusion - which did not provide any relief to his symptoms. Tr. at 332, 363, 367, 380, 444, 459.

Of special importance to this discussion are the treatment records of neurosurgeons Dr. Castiglia and Dr. Lewis, both of whom treated Plaintiff's back impairment on an ongoing basis during the pendency of his disability application. Dr. Castiglia had seen Plaintiff since at least October 2013, before Plaintiff filed his disability claim, until March 26, 2015. Tr. at 342, 371, 464. Dr. Lewis treated Plaintiff from July 2015 until June 2016, and in September 2015, along with Dr. Rasmusson, performed lumbar interbody fusion surgery at L4-5, L5-S1. Tr. at 449, 451-55, 485-86. At various points during their treatment, each physician reported that, despite undergoing conservative treatment measures and surgical interventions, Plaintiff's radiating back pain continued to worsen over the years resulting in pain levels that ranged from 7/10 to 9/10. Tr. at 333-34, 343, 347, 363-64, 365-66, 485-86. They consistently noted increased numbness, diminished sensation and loss of strength in Plaintiff's left leg, inability to fall asleep due to back pain, hesitant or labored gait, and significant restriction in range of motion at the waist where Plaintiff could only flex and extend his back five degrees beyond neutral without severe pain. *Id.* On several occasions in 2014, Dr. Castiglia recommended that Plaintiff undergo transforaminal lumbar interbody fusion surgery to treat his disc collapse at L5-S1 as well as foramina stenosis at L 4-5. Tr. at 343, 347. In September 2015 Dr. Lewis performed lumbar fusion at L4-5, L5-S1 with pedicle screw instrumentation. However, Plaintiff's back pain and range of motion had worsened after the surgery. Tr. at 439, 444, 485-86. Following a CT scan that revealed that there was no evidence of solid interbody fusion at L4-5 and L5-S1 (Tr. at 443), Dr. Lewis discussed the possibility of removing the pedicle screws from Plaintiff's lumbar back to address his very limited range or motion and worsening back pain. Tr. at 486. In addition to noting Plaintiff's symptoms

7

during their treatment and describing treatment prognoses, both physicians consistently and independently opined that Plaintiff was totally disabled, "100% temporary impaired," and unable to work.  Tr. at. 331-33, 343, 364, 367, 370, 439-40, 445, 448, 450, 460, 486.

In formulating Plaintiff's RFC, the ALJ assigned little weight to the statements of Drs. Castiglia and Lewis because they contained opinions about Plaintiff's inability to work and lacked the function-by-function analysis of Plaintiff's functional abilities.  *Id*. at 25.  He also assigned significant weight to the opinion of consultative examiner Dr. Siddiqui, who opined that Plaintiff had mild to moderate limitations in his ability to sit, stand, climb, push, pull or carry heavy objects. Tr. at 24.  The Court disagrees with the ALJ's weighing of these opinions for the following reasons.

First, his analysis of Drs. Castiglia and Lewis's opinions was so limited that it not only failed to identify either physician and discuss their treatment records with any particularity, but also consisted only of a one-sentence generic paragraph in which he discounted their statements because they opined on the issues reserved to the Commissioner and lacked a function-by-function analysis.  *Id.*  While the Court agrees that opinions on whether a claimant is disabled are opinions on issues reserved to the Commissioner, *see* 20 C.F.R. § 416.927(d), the ALJ should have expressly considered the rest of their treatment records by applying the *Burgess* factors rather than reject the entire opinions of both physicians as to Plaintiff's total disability.  *Estrella*, 925 F.3d at 96.  However nowhere in his decision did the ALJ analyze *any* of the *Burgess* factors, such as the frequency and extent of each physician's treatment of Plaintiff or consistency of each opinion with the rest of the record nor did he furnish "good reasons" for assigning little weight to them.

In addition to rejecting Drs. Castiglia and Lewis' opinions because they contained statements on issues reserved to the Commissioner, the ALJ justified affording little weight to them because they lacked a function-by-function analysis of Plaintiff's limitations.  Tr. at 25.  It

has been recognized that when the record does not contain a medical opinion that provides indication of Plaintiff's functional or work limitations, the ALJ is under an affirmative duty to develop the record and seek clarification from acceptable medical sources about claimant's limitations. *See Walters v. Astrue*, No. 11-CV-640 (VEB), 2013 WL 598331, at *6 (N.D.N.Y. Feb. 15, 2013). Therefore, having concluded that the record lacks a function-by-function assessment of Plaintiff's limitations, the ALJ was under the affirmative duty to further develop the record by contacting Plaintiff's treating sources for their opinion on Plaintiff's functional abilities in light of their extensive treatment of his back impairment. *See, e.g.*, *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) (the ALJ was obligated to seek additional information from Plaintiff's treating physician when he complained that clinical findings in the opinion were inadequate); *Ubiles v. Astrue*, No. 11-CV-6340T (MAT), 2012 WL 2572772, at *9 (W.D.N.Y. July 2, 2012) (when there is a gap in the record concerning the findings of a treating physician, the ALJ is obligated to seek out the missing assessment of Plaintiff's limitations because "it is unreasonable to expect a physician to make, on his own accord, the detailed functional assessment demanded by the Act in support of a patient seeking SSI benefits").

Even though remand is "not always required when an ALJ fails in his duty to request opinions, . . . where . . . the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity[,]" *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013), the Court finds that the record here does not contain sufficient evidence from which the ALJ could have assessed such very specific RFC. *See Cadet v. Colvin*, 121 F. Supp. 3d 317, 320 (W.D.N.Y. 2015) ("[W]here a record contains no formal RFC assessments from a treating physician, and does not otherwise contain sufficient evidence . . . from which the petitioner's RFC

can be assessed, an 'obvious gap' exists and the ALJ is obligated to further develop the record.") (internal citations omitted).

Here, the ALJ arrived at Plaintiff's RFC without incorporating a medical opinion provided by either of Plaintiff's treating neurosurgeons and by relying solely on the opinion of Dr. Siddiqui, a one-time consultative examiner, and on his own interpretations of the bare medical findings contained in the record. This was problematic for multiple reasons. First, the courts of this Circuit have consistently cautioned the ALJs about relying on the findings of consultative examinations after a single examination. *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013); *see also Hamm v. Colvin*, No. 16cv936(DF), 2017 WL 1322203, at *17 (S.D.N.Y. Mar. 29, 2017) (a consultative physician's opinion is entitled to "little weight" "because their examinations are often brief, are generally performed without benefit or review of the claimant's medical history, and, at best, only give a glimpse of the claimant on a single day. Often, consultative reports ignore or give only passing consideration to subjective symptoms without stated reasons."). The ALJ's reliance on the June 2014 opinion of Dr. Siddiqui was improper because the opinion was issued more than a year prior to Plaintiff's lumbar fusion surgery performed by Dr. Lewis, and almost two and a half years before the ALJ's decision. Tr. at 349, 453-55. While the Court recognizes that the age of a medical opinion might not necessarily render it stale, *Andrews v. Berryhill*, No. 17-CV-6368(MAT), 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018), the record here contains sufficient evidence to suggest the worsening of Plaintiff's degenerative disc condition since 2014, when Dr. Siddiqui rendering his opinion, requiring Plaintiff to undergo fusion surgery in September 2015. *See Carney v. Berryhill*, No. 16-CV-269-FPG, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017) ("A medical opinion may be stale if it does not account for the

claimant's deteriorating condition."). Additionally, the opinions of Drs. Lewis and Castiglia were rendered after Dr. Siddiqui's one-time exam.

Second, given the lack of function-by-function assessments from Plaintiff's treating physicians, as well as the lack of an updated opinion by a consultative examiner, the ALJ formulated Plaintiff's RFC based on his own interpretation of MRI, CT and x-ray imagining, evidence from Plaintiff's examinations, and statements made to treatment providers in formulating Plaintiff's RFC. This was not appropriate. *See, e.g.*, *Berman v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 252, 257 (W.D.N.Y 2018) (an ALJ is not a medical professional and is not qualified to formulate a claimant's RFC based on the bare medical findings); *Wells v. Colvin*, 1:13-CV-00776 (MAT), 2015 WL 6829711, *2 (W.D.N.Y. 2015) (the ALJ was unqualified to interpret objective findings of degenerative changes within claimant's lumbar and cervical spine and evidence from physical examinations, and his decision to do so rather than obtain a medical opinion regarding claimant's functional limitations was an error).

Therefore, having failed to apply the proper legal standards in evaluating opinions of Plaintiff's treating physicians and failed to properly develop the record regarding Plaintiff's functional limitations stemming from his back impairment prior to formulating Plaintiff's RFC, the ALJ committed legal errors requiring remand. *See, e.g.*, *Ferraro v. Saul*, 806 F. App'x 13, 15-16 (2d Cir. 2020) (summary order) (remand is necessary where ALJ failed to apply the *Burgess* factors or to give "good reasons" for discounting treating sources' opinions: conclusory assertions that treating physician opinions were not supported by medical evidence, or were inconsistent with opinions by consulting physicians, were not "good reasons"); *Byrne v. Berryhill*, 752 F. App'x 96, 98 (2d Cir. 2019) (summary order) (ALJ's conclusory reasons for rejecting treating physician opinions without consideration of the *Burgess* factors or the furnishing of good reasons for the

11

weight assigned "contravenes the regulations and requires remand"). Because the Court has determined that remand of this matter for further administrative proceedings is necessary, the Court declines to reach decision on Plaintiff's remaining arguments. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (ECF No. 15) is hereby GRANTED, and the Commissioner's motion for judgment on the pleadings (ECF No. 20) is DENIED. This case is hereby REMANDED to the Commissioner for further proceedings consistent with this order. The Clerk of Court is directed to enter judgment and close the case.

IT IS SO ORDERED.

Dated: July 15, 2020
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court